UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOSHUA PATRICK SMITH,
      Plaintiff,

v.                          Case No.: 3:23cv5661/TKW/ZCB

DAVONTE WILLIAMS, et al.,
      Defendants.
_____/

## **REPORT AND RECOMMENDATION**

This is a *pro se* prisoner civil rights case filed under 42 U.S.C. § 1983. Currently before the Court is a motion to dismiss filed by Defendants. (Docs. 72, 80).[1] Plaintiff has not responded in opposition. (Doc. 75 at 2). For the reasons below, Defendants' motion should be denied.

### I.    Summary of Plaintiff's Factual Allegations[2]

Plaintiff is incarcerated in the Florida Department of Corrections (FDOC). He has sued five correctional officers in their individual

---

[1] Defendant McCorvey initially filed a motion to dismiss (Doc. 72), which was later adopted by Defendant Williams (Doc. 80).

[2] At this stage, the Court assumes the truth of Plaintiff's allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

capacities: Lt. Cade,[3] Ofc. Williams, Ofc. McCorvey, Sgt. Alvarez, and Ofc. "John Doe." (Doc. 21 at 1-4). In his complaint, Plaintiff alleges he was housed at Santa Rosa Correctional Institution on Self Harm Observation Status (SHOS). (*Id.* at 6). On October 17, 2021, Plaintiff intentionally cut a vein in his right arm. (*Id.*). Two hours later, a nurse looked into Plaintiff's cell during her rounds and allegedly notified security staff that, "[t]here's blood everywhere." (*Id.* at 6-7). Defendant Alvarez responded and ordered Plaintiff to submit to hand restraints, and he complied. (*Id.* at 7). Defendant Alvarez then allegedly ordered Plaintiff to kneel in front of the cell door. (*Id.*). Plaintiff says he initially complied before becoming dizzy and lying face down on the cell floor. (*Id.*).

Approximately twenty minutes later, Defendants Alvarez, McCorvey, Williams, and "John Doe" allegedly entered Plaintiff's cell. (*Id.*). According to Plaintiff, Defendant Alvarez asked, "Can the camera see?" (*Id.*). Defendant McCorvey responded, "No." (*Id.*). Defendants McCorvey, Alvarez, Williams, and "John Doe" then allegedly struck

---

[3] The Court recently dismissed Defendant Cade for lack of service. (Doc. 92).

Plaintiff in the head, body, and face with closed fists, knee strikes, and kicks, even though Plaintiff was restrained and not resisting. (*Id.* at 7-8, 15-17). Plaintiff alleges he suffered lacerations, bruising, and lost consciousness. (*Id.* at 8, 14, 16-19).

Plaintiff woke up in a medical treatment room. (*Id.* at 8). Defendant Alvarez allegedly shoved ammonia smelling salts up Plaintiff's nose, repeatedly poked him in the eyes, and threatened him. (*Id.*). Defendant Cade sat in the room and watched. (*Id.*). According to Plaintiff, the officers in the room made derogatory comments and laughed at Plaintiff. (*Id.*). Plaintiff also received a saline IV and Dermabond application to his right arm. (*Id.* at 9).

Defendant McCorvey eventually escorted Plaintiff back to his cell. (*Id.*). During the escort, Plaintiff had difficulty walking and stumbled. (*Id.*). Defendant McCorvey allegedly told him that if he fell, then she would let him fall on his face. (*Id.*). Plaintiff says he was placed back in the same cell with blood and vomit on the floor and still wearing a smock covered in dried blood and vomit. (*Id.*). After a shift change, Plaintiff was allowed to clean himself and received a clean smock and blanket. (*Id.*). The cell was also cleaned. (*Id.*). Five days after the incident,

Plaintiff received additional medical treatment. (*Id.* at 10-11). A nurse noted a small hematoma and superficial abrasion on the left side of his face. (*Id.* at 11). Plaintiff received an additional saline IV and anti-nausea medication. (*Id.*).

In his complaint, Plaintiff alleges Defendants Alvarez, Williams, McCorvey, and "John Doe" violated the Eighth Amendment by using excessive force against him. (*Id.* at 13-19). He also asserts state law claims of assault and battery. (*Id.*). As relief, Plaintiff seeks compensatory and punitive damages. (*Id.* at 13).

## II.    Discussion

Defendants McCorvey and Williams—the only Defendants who have appeared—seek dismissal of Plaintiff's federal claims for failure to exhaust administrative remedies. (Doc. 72 at 7-16). They seek dismissal of Plaintiff's state law claims for failure to comply with the statutory requirements of Fla. Stat. § 768.28. (*Id.* at 17-19). And lastly, Defendants seek dismissal of Plaintiff's request for punitive damages as barred by 18 U.S.C. § 3626(a)(1)(A). (*Id.* at 19-27). Each argument will be addressed below.

### A.    Exhaustion argument

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner must exhaust administrative remedies before bringing an action in federal court.  *Porter v. Nussle*, 534 U.S. 516, 520 (2002).  The exhaustion requirement is intended to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (cleaned up).  "The exhaustion requirement applies to all inmate suits about prison life[.]"  *Tilus v. Kelly*, 510 F. App'x 864, 866 (11th Cir. 2013).  Because "failure to exhaust is an affirmative defense," the "defendants have the burden of proof."  *Varner v. Shepard*, 11 F.4th 1252, 1257 (11th Cir. 2021).  If that burden is met, then dismissal is required.  *Wright v. Georgia Dep't of Corr.*, 820 F. App'x 841, 843 (11th Cir. 2020).

To exhaust, a prisoner must complete the administrative process using the prison's grievance procedures.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  The FDOC has a three-step grievance procedure: (1) the inmate files an informal grievance within twenty days of the incident; (2) if the grievance is not resolved informally, then the inmate files a formal

grievance at the institutional level within fifteen days from the date the informal grievance was responded to; and (3) if the inmate is unhappy with the formal grievance response, then the inmate appeals to the FDOC Secretary/Central Office within fifteen days of the response to the formal grievance. Fla. Admin. Code Ann. r. 33-103.005-007, 011 (2018).

The Eleventh Circuit has adopted a two-step framework for deciding whether to dismiss for lack of exhaustion. *Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th 2008). Under the first step, the Court must "look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true." *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015). If the facts as stated by the prisoner show a failure to exhaust, then the case should be dismissed at step one. *Id*.

Where dismissal is not warranted on the prisoner's view of the facts, it is necessary to proceed to step two. *Id*. There, "the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust." *Id*. "To make these specific findings, courts should . . . look outside [of] the pleadings[,]" ensuring the parties have had sufficient opportunity to

6

develop the record. *Jenkins v. Sloan*, 826 F. App'x 833, 838 (11th Cir. 2020). A district court need not hold an evidentiary hearing when none has been requested and instead may rely on the papers submitted by the parties. *See Zavala v. Ward*, No. 21-10989, 2024 WL 510011, at *4 (11th Cir. Feb. 9, 2024) ("Because [the plaintiff] never moved for an evidentiary hearing, the district court was free to make its factual determinations based on the papers submitted . . . .").

In this case, it is undisputed that on November 1, 2021, Plaintiff filed a direct grievance to the FDOC Secretary/Central Office regarding the October 17, 2021 incident. (Doc. 21 at 11-12; Doc. 72 at 13-16; Doc. 72-2; Doc. 72-3 at 2-3; Doc. 72-4). That grievance was reviewed, evaluated, and denied by the FDOC Secretary's representative on November 10, 2021. (Doc. 72-3 at 1). Here is what the FDOC Secretary's representative said:

> Your appeal has been reviewed and evaluated. The subject of your grievance was previously referred to the Office of the Inspector General. It is the responsibility of that office to determine the amount and type of inquiry that will be conducted. This inquiry/review may or may not include a personal interview with you. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.

> As this process was initiated prior to the receipt of your appeal, your request for action by this office is denied.

(*Id*.).

Applying *Turner* step one, when the prisoner's view of the facts are accepted as true, they do not show a failure to exhaust in this case. Thus, it is necessary to proceed to *Turner* step two, where the Court looks to the materials presented and makes findings regarding whether Defendants have shown a failure to exhaust. Here, the Court finds that Defendants have not made the requisite showing.

As mentioned above, Plaintiff filed a direct grievance (Log #21-6-31671) with the FDOC Secretary/Central Office. The Secretary/Central Office did not return that grievance without action or find that it was procedurally noncompliant. Instead, the Secretary/Central Office "reviewed and evaluated" the grievance and then "denied" it because the matter had been referred to the OIG. Although Defendants argue that Plaintiff's grievance *should* have been returned because it was procedurally defective (Doc. 72 at 13-16), the fact is that it was not.

Instead, the Secretary/Central Office "reviewed and evaluated"[4] the grievance. (Doc. 72-3). And the Eleventh Circuit has made clear that "district courts may not enforce a prison's procedural rule to find a lack of exhaustion after the prison itself declined to enforce the rule." *Whatley v. Smith*, 898 F.3d 1072, 1083 (11th Cir. 2018). Thus, the fact that the Secretary/Central Office should have or could have returned Plaintiff's direct grievance as procedurally improper is irrelevant to the exhaustion issue because the prison officials did not return the direct grievance as procedurally improper.

Moreover, once Plaintiff received the response from the Secretary/Central Office indicating that the matter had been referred to the OIG, there was nothing more for Plaintiff to do. Plaintiff had been informed that it was the OIG's "responsibility . . . to determine the amount and type of inquiry that will be conducted." (Doc. 72-3 at 1). And

---

[4] The fact that the Secretary/Central Office indicated that the grievance had been "reviewed and evaluated" sufficiently evidences that the grievance was considered on the merits and not rejected as procedurally deficient. This is not a situation where the Secretary/Central Office informed an inmate that his grievance was being returned or not adjudicated. Instead, the Secretary/Central Office affirmatively told Plaintiff that his grievance had been "reviewed and evaluated," which is language that shows a consideration of the merits.

he was further informed that once the OIG had completed its investigation, "information will be provided to the appropriate administrators for final determination and hearing." (*Id.*). Based on the Secretary/Central Office's response, there were no further actions Plaintiff needed to take in order to have the matter investigated by prison officials—the investigation was underway. Thus, Plaintiff sufficiently exhausted his administrative remedies. Judges in this district and others have reached the same conclusion in similar situations. *See Joseph v. Gorman*, No. 4:11cv34/MP/CWS, 2012 WL 4089012, at *6 (N.D. Fla. Mar. 12, 2012), *adopted by* 2012 WL 4088945 (N.D. Fla. Sept. 17, 2012) ("A response that denies a grievance appeal because the matter is already under investigation, as opposed to returning it without action or finding it to be in non-compliance, must be considered exhaustion of administrative remedies. At that point, there was nothing further for Plaintiff to do."); *see also Jackson v. Lanier*, No. 5:19cv114/MCR/MJF, 2021 WL 6339036, at *7 n.4 (N.D. Fla. Nov. 29, 2021), *adopted by* 2022 WL 94929 (N.D. Fla. Jan. 10, 2022) ("To the extent the referral to the OIG foreclosed a parallel review through the administrative grievance process, or resulted in the Secretary declining to take action on [the]

10

direct administrative grievance, that circumstance would not a support a finding that [the plaintiff] failed to properly exhaust. Rather, it would support a finding that the administrative grievance process was unavailable to him."); *Hardin v. Jones*, No. 3:18cv3-J-32JBT, 2020 WL 325649, at *4 (M.D. Fla. Jan. 21, 2020) (stating that "once the FDOC referred [the plaintiff's] emergency grievance to the Inspector General's Office—Plaintiff was not required to pursue subsequent stages of the administrative grievance process or wait for the conclusion of the Inspector General's investigation"). Because Defendants McCorvey and Williams have not shown that Plaintiff failed to properly exhaust his administrative remedies, their motion to dismiss for lack of exhaustion should be denied.

## B. Defendants Are Not Entitled to Dismissal of Plaintiff's State Law Claims Under Fla. Stat. § 768.28

Next, Defendants McCorvey and Williams seek dismissal of Plaintiff's state law assault and battery claims. (Doc. 72 at 17-19). Defendants argue that Florida law provides state employees with immunity from personal liability for acts taken in the scope of their employment unless the employee "'acted in bad faith or with malicious

11

purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" (*Id.* at 17) (quoting Fla. Stat. § 768.28(9)(a)).

Federal courts look to the Florida state courts to define the terms used in Fla. Stat. § 768.28(9)(a). *See N.R. by Ragan v. School Bd. Of Okaloosa Cnty.*, 608 F. Supp. 3d 1159, 1171 (N.D. Fla. 2022) (citing Florida state cases); *see also Ratlieff v. City of Fort Lauderdale*, No. 22-cv-61029, 2023 WL 3750581, at *10 (S.D. Fla. June 1, 2023) (same). And the Florida courts have said that "bad faith" is the equivalent of "actual malice." *Peterson v. Pollack*, 290 So. 3d. 102, 109 (Fla. 4th DCA 2020) (citation omitted), while "malicious purpose" means conduct that was committed with "ill will, hatred, spite, or an evil intent," alternatively phrased as "the subjective intent to do wrong." *Id.* (citation omitted). "Wanton" means "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or property." *Id.* at 110 (cleaned up). And "willful" conduct is done "intentionally, knowingly and purposely." *Id.* (citation omitted).

At the motion to dismiss stage, the Court must ask whether Plaintiff has alleged sufficient facts to permit the Court to draw a reasonable inference that Defendants acted with the subjective intent to

do wrong or with a conscious and intentional indifference to the consequences and with knowledge that damage was likely to be done to plaintiff. The answer to that question in this case is yes.

Plaintiff has alleged that Defendants McCorvey and Williams intentionally and repeatedly struck him in the head, body, and face with closed fists, knee strikes, and kicks, even though Plaintiff was lying face down with his hands restrained behind his back and was not moving or resisting. (Doc. 21 at 7-8, 15-17). Plaintiff has also alleged that Defendants Williams and McCorvey acted "in a malicious and sadistic manner for no other purpose than to inflict harm"; that each of them knowingly inflicted "wanton pain and suffering"; and that each of their actions were "clearly inspired by malice." (*Id.* at 15-18). These allegations, when accepted as true and with all reasonable inferences drawn in Plaintiff's favor, are sufficient to survive Defendants' motion to dismiss. And that decision is consistent with precedent from federal courts across Florida.[5]

---

[5] *See, e.g.*, *Bowden v. Snider*, No. 2:22-cv-671, 2023 WL 7710658, at **3-4 (M.D. Fla. Nov. 15, 2023) (rejecting immunity argument as to battery claim at motion to dismiss stage where amended complaint alleged that defendants twice sprayed him with chemical agent without any

## C.    Defendants are not entitled to dismissal of Plaintiff's request for punitive damages

Lastly, Defendants have moved to dismiss Plaintiff's request for punitive damages on the ground that they are barred by 18 U.S.C. § 3626(a)(1)(A).  (Doc. 72 at 19-27).  The Court believes this issue should not be resolved at the motion to dismiss stage.  As this Court and others

---

reasonable justification); *Forrest v. Pustizzi*, No. 16-cv-62181, 2017 WL 2472537, at \*7 (S.D. Fla. June 7, 2017) (same, where plaintiff alleged that defendant beat him even though he posed no immediate threat and offered no resistance to officers' commands); *Robinson v. Lambert*, No. 6:15-cv-1896, 2017 WL 11502316, at \*6 (M.D. Fla. Feb. 28, 2017) (same, where plaintiff alleged that officers, acting maliciously and sadistically, threatened him and broke his arm by using objectively unreasonable force); *Valdes v. Miami-Dade Cnty.*, No. 12-22426-CIV, 2013 WL 5429938, at \*10 (S.D. Fla. Sept. 27, 2013) (same, where plaintiff alleged that officers maliciously pushed his head against the wall while he was handcuffed and then removed the handcuffs and pushed him to the floor and kicked him even though he was not resisting or threatening); *Barnes v. Manatee Cnty. Sheriff's Dep't*, No. 8:12-cv-84, 2012 WL 2060877, at \*\*2-3 (M.D. Fla. June 7, 2012) (same, where plaintiff alleged that defendant conducted a "premeditated" and "unprovoked" attack on a "passive non-violent and nonthreatening" plaintiff); *Meadows v. City of Inglis*, No. 1:11cv45/MP/GRJ, 2011 WL 3678833, at \*2 (N.D. Fla. Aug. 22, 2011) (same, where amended complaint alleged that defendant forcibly seized plaintiff with excessive and improper force sufficient to fracture her arm even though plaintiff warned defendant that she was recovering from surgery and thus especially susceptible to injury); *Dillard v. Bush*, No. 8:09-cv-323, 2009 WL 1537902, at \*2 (M.D. Fla. June 2, 2009) (same, where plaintiff alleged that defendant hyperextended plaintiff's arms and slammed him into police cruiser even though plaintiff offered no resistance).

have recognized, "[r]esolution of [this] issue is not dispositive of this case, nor will it change the course of proceedings" on the Plaintiff's claims against Defendants. *Allen v. Wilkerson*, No. 4:22cv148/WS/MJF, 2024 WL 1068889, at *6 (N.D. Fla. Feb. 6, 2024), *adopted by* 2024 WL 1054625 (Mar. 11, 2024). Thus, "Defendants may raise the issue again at the trial stage." *Id.*; *see also Watson v. Harris*, No. 1:23cv41/AW/ZCB, 2023 WL 9058715, at *2 (N.D. Fla. Dec. 8, 2023), *adopted by* 2024 WL 23160 (Jan. 2, 2024); *Baker v. Rathel*, No. 1:23cv3/AW/MJF, 2023 WL 7496224, at *5 (N.D. Fla. Oct. 5, 2023), *adopted by* 2023 WL 7497491 (Nov. 13, 2023).

Moreover, even if the argument was properly raised in a motion to dismiss, it lacks merit for the reasons explained in multiple other opinions. *See Blake v. Ortega*, No. 3:23cv8553/LC/HTC, 2024 WL 2000107, at *4 (N.D. Fla. Mar. 18, 2024), *adopted by* 2024 WL 1996014 (May 6, 2024); *see also Santiago v. Walden*, No. 3:23cv741/MMH/JBT, 2024 WL 2895319, at *9 (M.D. Fla. June 10, 2024); *Walker v. Bailey*, No. 3:23-cv-511/MMH/MCR, 2024 WL 3520868, at *8 (M.D. Fla. July 24, 2024). Accordingly, Defendants' motion to dismiss Plaintiff's request for punitive damages should be denied.

### III.   Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that the motion to dismiss filed by Defendants McCorvey and Williams (Docs. 72, 80) be **DENIED**.

At Pensacola, Florida this 9th day of September 2024.

/s/ *Zachary C. Bolitho*

Zachary C. Bolitho
United States Magistrate Judge

### Notice to the Parties

Objections to the proposed findings and recommendations set forth above must be filed within fourteen days of the date of this Report and Recommendation. Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.